UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

"IN ADMIRALTY"

CASE NO. 21-CV-20556-KMM

NAVAL LOGISTICS, INC. d/b/a
MIDDLE POINT MARINA,

    Plaintiff,
and

BISCAYNE TOWING & SALVAGE, INC.,

    Intervening Plaintiff,
vs.

M/V PETRUS, in rem,
CHARTERED YACHTS MIAMI LLC, in personam
and GREG PACK, in personam,

    Defendants.
_____

M/V PETRUS,
CHARTERED YACHTS MIAMI LLC
and GREG PACK,

Counter-Plaintiffs
v.

NAVAL LOGISTICS, INC. d/b/a
MIDDLE POINT MARINA,

Counter-Defendant.
_____/

**DEFENDANTS ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM
AGAINST NAVAL LOGISTICS, INC. d/b/a MIDDLE POINT MARINA**

    Defendants M/V PETRUS, CHARTERED YACHTS MIAMI LLC and GREG PACK ("Defendants"), by and through its undersigned counsel, hereby files their Answer, Affirmative

Defenses and Counterclaim against Naval Logistics, Inc. d/b/a Middle Point Marina ("MPM") and states:

1. Admitted.

2. Admitted.

3. Admitted as to the identity, registration and location of the M/V Petrus ("Vessel"). Admitted that Defendant Greg Pack ("Pack") address is 870 W 1100 W Bountiful, Utah 84087. Denied that the Vessel is owned by Defendant Greg Pack.

## COUNT I – Breach of Contract

4. Defendants re-alleges and reassert his responses to paragraphs 1 through 3 as if fully set forth herein.

5. Admitted.

6. Admitted.

7. Denied that the Vessel sank on December 21, 2020. Admitted that the Vessel sank while in MPM's custody and control at MPM's facility on Sunday, December 20, 2020. Admitted that MPM hauled out and lifted the Vessel after the sinking and failed to do so before the sinking. Denied that MPM salvaged the Vessel.

8. Denied.

9. Admitted that the Vessel and its Owner entered into a Shipyard Agreement for storage of the Vessel which was never consummated. Denied that Pack entered into the agreement individually. Admitted that the attachment is a true and correct copy.

10. Admitted.

11. Denied. Admitted that the attachment is a true and correct copy.

12. Denied.

13. Denied.

14. Denied.

15. Denied.

16. Denied.

17. Denied.

18. Denied.

19. Denied.

20. Denied.

21. Denied.

## COUNT II – Maritime Lien for Necessaries

22. Defendant re-alleges and reassert his responses to paragraphs 1 through 21 as if fully set forth herein.

23. Purports to state a legal conclusion rather than an allegation, and no response is required. To the extent any response is required, the allegations of paragraph 23 are denied.

24. Denied.

25. Denied.

26. Denied.

    a. Denied.

    b. Denied.

    c. Denied

    d. Denied

## **AFFIRMATIVE DEFENSES**

The Defendants reiterates its responses to Plaintiff's allegations in paragraphs 1 through 26 above, and for its affirmative defenses alleges as follows:

### **1st Affirmative Defense – Contributory Negligence**

Defendants' aver that the sinking of the Vessel at MPM's dock was caused by Plaintiff MPM in whole, in part, or contributed to by the negligence, fault or want of care by Plaintiff, and if Plaintiff is entitled to any recover, the same of which is denied, such recovery must be apportioned or completely precluded based on the fault and/or negligence of the Plaintiff. MPM had a duty to keep the Vessel safe and floating knowing full well that the Vessel had taken on water prior to its arrival at Merrill-Stevens and after agreeing to tow it to the MPM yard failing to lift the Vessel out of the water or to otherwise their obligation to monitor the Vessel after it arrived at their facility afloat on December 18, 2020. As of the time of taking the Vessel under tow the Vessel was under the care and custody of MPM until it sank and even after it sank at their yard on Sunday, December 20, 2020.

### **2nd Affirmative Defense – Failure to State a Claim**

Both Count I and Count II fails to state a claim for which relief can be granted in that MPM cannot maintain a claim for salvage as they did not provide a voluntary act and because they had a "pre-existing official or contractual duty to the owner" of the Vessel and to the Vessel itself. To state a claim for salvage, the salvor must prove the three elements of:

(a) a maritime peril from which the ship or other property could not have been rescued without the salvor's assistance;

(b) a voluntary act by the salvor under no pre-existing official or contractual duty to the owner; and

(c) success in saving, or in helping to save at least part of the property at risk.

*Ocean Servs. Towing & Salvage, Inc. v. Brown*, 810 F. Supp. 1258, 1262 (S.D. Fla. 1993) (citing *The Sabine,* 101 U.S. 384, 25 L. Ed. 982 (1879)).

MPM had a duty to keep the Vessel safe and floating knowing full well that the Vessel had taken on water prior to its arrival at Merrill-Stevens and after agreeing to tow it to the MPM yard failing to lift the Vessel out of the water or to otherwise their obligation to monitor the Vessel after it arrived at their facility afloat on December 18, 2020. As of the time of taking the Vessel under tow the Vessel was under the care and custody of MPM until it sank and even after it sank at their yard on Sunday, December 20, 2020.

Furthermore, there was no agreement on salvage, neither the terms nor the fees for services rendered if any services were indeed rendered so Count I fails to state a claim for which relief can be granted. Pre-existing duties owed by Plaintiff precludes a claim for salvage and therefore both Count I and Count II fail to state a claim for which relief can be granted.

Defendants' further state that additional affirmative defenses may be pleaded based on discovery in this case and this Answer and Affirmative Defenses to the Complaint may be amended.

## M/V PETRUS, CHARTERED YACHTS MIAMI LLC AND GREG PACK'S COUNTERCLAIM

Defendants M/V PETRUS, CHARTERED YACHTS MIAMI LLC and GREG PACK ("Counter-Plaintiffs"), by and through undersigned counsel, hereby state the following allegations in support of its counterclaim against Naval Logistics, Inc. d/b/a Middle Point Marina ("MPM") pursuant to Fed. R. Civ. P. 13. In support, Counter-Plaintiff states the following:

## JURISDICTION & VENUE

1. This is a cause within the admiralty and maritime jurisdiction of this Honorable Court founded upon Article III of the United States Constitution and within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, and further pursuant to 28 U.S.C. § 1333 and 42 U.S.C. § 31342.

2. M/V PETRUS, a 1998 88' Leopard, Hull ID 022317, her engines, equipment, tackle, furnishings, etc. (the "Vessel"), is a luxury motor vessel in question which sank at MPM's facility while it was docked under MPM's care and custody.

3. CHARTERED YACHTS MIAMI LLC, ("CYM"), is a limited liability company organized and existing under the laws of the State of Florida which owns the M/V PETRUS.

4. Greg Pack ("Pack") is the principal, agent and beneficial owner of CYM who resides at is 870 W 1100 W Bountiful, Utah 84087.

5. Plaintiff, Naval Logistics, Inc. d/b/a Middle Point Marina ("MPM"), is a corporation organized and existing under the laws of the State of Florida. MPM maintains its principal place of business at: 3601 NW South River Dr, Miami, Florida.

6. The Court also has general personal jurisdiction over MPM pursuant to Fed. R. Civ. P. 4(k) and Fla. Stat. § 48.193 because YM:

    a. Is incorporated in the State of Florida; and/or

    b. Had an office or agency in this state and/or county; and/or

    c. Entered into a contract with a forum selection clause selecting and consenting to Broward County as the exclusive jurisdiction and venue; and/or

    d. Engaged in substantial activity within this state

7. In addition, the Court has personal jurisdiction over MPM because it has had continuous and systematic contacts with the state of Florida including agents and/or members and/or employees, acting in the scope of their agency or employment, who carried out the business of MPM in Florida by being incorporated in Florida and holding themselves out to have a shipyard in Broward County.

8. In addition to owning, using, possessing, renting or leasing a shipyard in Florida, MPM had regular and systematic business communications with individuals and business in this state to offer yacht repair services to Florida residents.

9. Due process is met as MPM conducted significant business in this state for its business purposes such that MPM should reasonably expect to be hailed into court.

## FACTS

10. CYM is the registered corporate owner of the Vessel, M/V Petrus.

11. Greg Pack is the principal, agent and beneficial owner of CYM.

12. Pack only acted on behalf of CYM in order to further the interests of CYM.

13. Pack did not enter into the Shipyard Agreement individually.

14. On November 07, 2020, the Vessel suffered a loss when the Vessel struck an underwater object and began to take on water while on the Miami River ("first sinking").

15. The Vessel has significant damage to its running gear, which on information and belief caused the flooding incident. CYM has been prevented from conducting a full and complete inspection because of Plaintiff's arrest of the Vessel.

16. Intervening Plaintiff BISCAYNE TOWING & SALVAGE, INC. d/b/a TowBoatUS Miami ("TowBoatUS Miami") initially dewatered the Vessel whereupon it was towed approximately 1 mile up the Miami River to RMK Merrill-Stevens ("Merrill-Stevens").

17. On Friday, December 18, 2020, the Vessel was towed from Merrill-Stevens to Middle Point Marina ("MPM").

18. The Vessel was brought to MPM's facility by MPM under an understanding that MPM would care for it, and it would be hauled out and put into dry storage so that CYM could begin repairing the Vessel for the damage suffered on the November 7, 2020 sinking.

19. On December 20, 2020, before MPM hauled out the Vessel it sat in the water unattended and suffered a second sinking at MPM's facility ("second sinking"). MPM knew that the Vessel had suffered the first sinking incident on the Miami River.

20. The Parties had agreed that the Vessel would be in MPM's care and custody, lifted out of the water and stored in MPM's dry storage while undergoing the repair process to fix the damage from the first sinking.

21. MPM's negligence in causing the second sinking has caused Counter-Plaintiffs' substantial damages as mentioned above.

## CAUSES OF ACTION

### COUNT I – BREACH OF IMPLIED WARRANTY OF WORKMANLIKE PERFORMANCE

22. The Counter-Plaintiffs' incorporates by reference paragraphs 1-21 as if they were fully set forth herein.

23. The Counter-Plaintiffs' have a claim for breach of the oral contract's implied warranty of workmanlike performance for the Vessel's dockage and storage at MPM's facility.

24. Counter-Plaintiffs' and MPM created an implied oral contract when they mutually agreed that MPM would tow the Vessel to MPM's facility where it would be hauled out and placed into dry storage so that the Vessel's damage from the first sinking could be repaired.

25. Dockage is a maritime service under the law.

26. The doctrine of warranty of workmanlike performance exists for every maritime contract under general maritime law.

27. MPM owed the Counter-Plaintiffs' a duty to exercise reasonable care for and protect the Vessel from damage while it was docked at their yard under the parties' oral agreement.

28. At MPM, the Vessel was retained by MPM in its care and custody of MPM as a bailee and thus MPM owed a duty to the Counter-Plaintiffs' and was legally responsible for the Vessel's condition while it was in their possession, custody and control.

29. MPM breached that duty when it allowed the Vessel to sink at its facility when it had full knowledge of the first sinking on November 7, 2020 and of the Vessel's significant hull damage.

30. MPM knew or should have known that the Vessel was damaged and should not have been left in the water over the weekend

31. The breach actually and proximately caused Counter-Plaintiffs' damages as they allowed the Vessel to sit in the water for days while they knew that the Vessel had hull damage from the first sinking incident.

32. The Counter-Plaintiffs' suffered actual harm as the Vessel sank for the second time which caused more water damage.

## COUNT II - NEGLIGENCE

33. The Counter-Plaintiffs' incorporates by reference paragraphs 1-21 as if they were fully set forth herein.

34. This claim is stated in the alternative.

35. MPM owed a duty to the Counter-Plaintiffs' to exercise reasonable care in storing the Vessel while it was docked at their facility as of December 18, 2020 and thus was legally responsible for the Vessel's condition while it was in their possession.

36. MPM breached that duty when it allowed the Vessel to sink at its facility when it had full knowledge of the first sinking on November 7, 2020 and of the Vessel's hull damage.

37. MPM knew or should have known that the Vessel was damaged and should not have been kept in the water over the weekend.

38. The breach actually and proximately caused Counter-Plaintiffs' damages as they allowed the Vessel to sit in the water for a few days while they knew that the Vessel had hull damage from the first sinking incident.

39. The Counter-Plaintiffs' suffered actual harm as the Vessel sank for the second time which caused more water damage.

WHEREFORE, the Counter-Plaintiffs respectfully request this Court enter judgment in its favor and against MPM for all damages incurred, together with costs, and prejudgment interest, and for all other relief this Court deems just and proper.

Dated: May 4, 2021                              Respectfully submitted,

**MOORE & COMPANY, P.A.**
*Attorneys for Defendants/Counter-Plaintiffs*
255 Aragon Avenue, 3rd Floor
Coral Gables, Florida 33134
Telephone:(786)221-0600
Facsimile: (786)221-0601
Email: michael@moore-and-co.com
Email: kvartak@moore-and-co.com

s/ Michael T. Moore
Michael T. Moore, Esq.
Florida Bar No. 207845
Kavan Vartak, Esq.
Florida Bar No. 1017058

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 4, 2021, I electronically filed the foregoing document with the Clerk of the court using CM/ECF. Copies of this pleading will be automatically served on all counsel of record through the Court's CM/ECF system.

s/ Michael T. Moore
Michael T. Moore, Esq.
Florida Bar No. 207845
