UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:21-cv-20556-LEIBOWITZ/LOUIS

NAVAL LOGISTICS, INC.
d/b/a MIDDLE POINT MARINA,

    *Plaintiff*,

v.

M/V PETRUS, *in rem*,
GREG PACK, *in personam*,
and CHARTERED YACHTS MIAMI LLC,

    *Defendants*.
_____/

## ORDER

**THIS CAUSE** comes before the Court on Plaintiff's Motion for Summary Judgment against Defendants M/V Petrus, *in rem*, and Greg Pack, *in personam* [ECF No. 134], filed on August 6, 2024, and Plaintiff's Motion for Default against Defendant Chartered Yachts Miami LLC [ECF No. 135], filed on August 14, 2024.

On June 25, 2024, this Court granted Defendants' counsel's Motion to Withdraw as to all Defendants and ordered Chartered Yachts Miami to obtain new counsel no later than July 25, 2024, or face default (as business entities are unable to represent themselves *pro se* in federal Court). [ECF No. 124]. No counsel has appeared for any of the Defendants, and Defendant Greg Pack has not responded to Plaintiff's Motion for Summary Judgment. Nor has Defendant Chartered Yachts Miami LLC, responded to Plaintiff's Motion for Default, despite this Court's Order to Show Cause on September 20, 2024, as to whether Defendant Greg Pack intends to defend this case. [ECF No. 141]. Accordingly, these Motions are ripe for judicial resolution on their merits.

## BACKGROUND[1]

The Defendant Vessel, the "Petrus," is an "88' Leopard motor vessel" which sank in the Miami River on November 7, 2020 (the "First Sinking"), and was salvaged by Biscayne Towing & Salvage, Inc. ("Biscayne"). [Statement Material Facts, ECF No. 131 ¶¶ 1–2]. After the First Sinking, Biscayne brought the Petrus to RMK Merrill Stevens Shipyard for haul out. [*Id.* ¶ 3]. Defendant Greg Pack ("Pack") instructed Plaintiff Naval Logistics, Inc., d/b/a Middle Point Marina ("MPM") to pick up, tow, and deliver the Petrus from RMK Merrill Stevens to Middle Point Marina, which MPM did on December 18, 2020. [*Id.* ¶¶ 5–6]. Pack did not advise MPM of the reason(s) the Petrus sank, nor did he alert MPM that the Petrus was unseaworthy. [Decl. of Eduardo Castillo, ECF No. 131-1 ¶ 5; *see* Statement Material Facts ¶ 30 ("There is no evidence that MPM knew that the Vessel was unseaworthy prior to its sinking.")]. Pack agreed that the Petrus would be kept in the water at MPM over the weekend and would be hauled out on Monday, December 21, 2020. [Statement Material Facts ¶ 8]. On December 21, 2020, while at the Middle Point Marina, the Petrus sank again (the "Second Sinking"). [*Id.* ¶ 9–10].

MPM notified Pack of the Second Sinking at 7:07 a.m. on December 21, 2020, after which MPM salvaged the Petrus by dewatering, floating, lifting, hauling out, and blocking it in its yard. [*Id.* ¶¶ 11–12]. Pack acknowledged that MPM performed the salvage, did not object to the salvage, and thanked MPM for salvaging the Petrus. [*Id.* ¶ 13]. On January 11, 2021, Pack entered into an

---

[1] Plaintiff filed a Statement of Material Facts in Support of its Motion for Summary Judgment, as required by S.D. Fla. L. R. 56.1(a). [Statement Material Facts, ECF No. 131]. Because no Defendant has filed a response and thus failed to controvert any fact, this Court deems admitted every fact in Plaintiff's Statement of Material Facts. *See* Fed. R. Civ. P. 56(e) ("If a party fails to . . . properly address another party's assertion of fact . . . the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it;" S.D. Fla. L. R. 56.1(c).

agreement with MPM (the "Shipyard Agreement") that listed himself as the owner of the vehicle and agreed to "pay Middle Point Marina for all services provided by the Marina [including] charges for haul out, launch, storage, work and other repairs[.]"  [*Id.* ¶¶ 14–16; ECF No. 1-3]. Pack "grant[ed] Middle Point Marina permission to operate the Vessel when necessary for the purpose of relocation or hauling.  All risks of loss or damage incurred in connection with the Vessel's operation for these purposes is assumed by [Pack] who agrees to hold the Releasees harmless and indemnify them from any costs and/or attorney's fees which arise therefrom." [Statement Material Facts ¶ 17].  Pack also agreed to pay all invoices "on presentation" before the Petrus left the Marina, and that MPM would be entitled to recover reasonable attorneys' fees if they engaged an attorney to collect an unpaid invoice.  [*Id.* ¶ 18].  Finally, Pack agreed that MPM would have a Maritime Lien on the Petrus for "storage, dockage, equipment, materials, labor, dockage, and any other necessaries provided to the Vessel."  [*Id.*].

MPM invoiced Pack for a total of $91,529.30 for the "labor, equipment, and materials expended during the salvage operation and towing from RMK Merrill Stevens."  [*Id.* ¶¶ 21].  Pack made a partial payment of $10,075.55 to MPM for the towing and salvage services, leaving a remaining balance of $81,453.75 owed to MPM.  [*Id.* ¶¶ 22–23].  Pack agreed to MPM charging his credit card for the storage of the Petrus from December 22, 2020, to January 22, 2021, at the rate of $3,500 plus tax and fees, after which the Petrus would incur dry dock storage charges at a rate of $220 per day, exclusive of taxes and fees.  [*Id.* ¶¶ 24–25].  The Petrus was stored at MPM until February 17, 2021, after which it was arrested by the United States Marshal Service.  [*Id.* ¶ 26].  MPM accrued $4,201.89 of unpaid storage charges from January 23, 2021, to February 8, 2021, and $6,179.25 from January 23, 2021, through the Petrus's arrest on February 17, 2021.  [*Id.* ¶¶ 28–29].

**LEGAL STANDARD**

**Summary Judgment:** A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Those materials may include, "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark*, 929 F.2d at 608.

If the moving party meets its burden, the non-moving party is then required "to go beyond the pleadings" and present competent evidence "showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Generally, "[t]he mere existence of a scintilla of evidence" supporting the non-movant's case is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). If, in response, the non-moving party does not sufficiently support an essential element of his case as to which he bears the burden of proof, summary judgment is appropriate. *Rice-Lamar v. City of Ft. Lauderdale, Fla.*, 232 F.3d 836, 840 (11th Cir. 2000). A fact is "material" for these purposes if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of fact is "genuine" if, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "In determining whether genuine issues of material fact exist, [the reviewing court] resolve[s] all

ambiguities and draw[s] all justifiable inferences in favor of the non-moving party." *Rice-Lamar*, 232 F.3d at 840 (*citing Anderson*, 477 U.S. at 255). However, when the record "taken as a whole" could not support a reasonable finding for the non-movant, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A "district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion." *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). The court "need not *sua sponte* review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials. At the least, the district court must review all of the evidentiary materials submitted in support of the motion for summary judgment. In addition, so that there can be an effective review of the case on appeal, the district court's order granting summary judgment must 'indicate that the merits of the motion were addressed.'" *Id.* at 1101–02 (citations omitted) (italicization added).

**Default:** "The failure of an artificial entity to obtain counsel, in violation of a court order or rule to do so, has repeatedly been held to support default judgment, even absent violations of other rules or orders." *Textron Fin. Corp. v. RV Having Fun Yet, Inc.*, No. 3:09CV2-J-34TEM, 2010 WL 1038503, at *5 (M.D. Fla. Mar. 19, 2010). The entry of default constitutes an admission by a defendant of the well-pleaded allegations in the complaint. *See Cancienne v. Drain Master of S. Fla., Inc.*, No. 08-61123-CIV, 2008 WL 5111264, at *1 (S.D. Fla. Dec. 3, 2008) (citing *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1277–78 (11th Cir. 2005)). However, a defendant's default "does not in itself warrant . . . entering a default judgment." *Goldman v. HSBC Bank USA, Nat'l Ass'n*, No. 13-81271-CIV, 2015 WL 1782241, at *1 (S.D. Fla Mar. 24, 2015) (alteration in original; internal quotation marks omitted) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l*

*Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

## DISCUSSION

Plaintiff moves for summary judgment on its two counts against Defendants Pack and the M/V Petrus: (Count I) Breach of Maritime Contract, and (Count II) Foreclosure of Maritime Lien for Necessaries. [Compl., ECF No. 1]. Plaintiff also moves for entry of Default against Defendant Chartered Yachts Miami LLC ("Chartered Yachts"), arguing that because Chartered Yachts, a business entity, impermissibly has not retained counsel despite being served, the Court should enter default. [Mot. for Default, ECF No. 135].

After a careful review of the Plaintiff's Motions, the Motion for Summary Judgment [ECF No. 134] and the Motion for Default [ECF No. 135] are both due to be GRANTED.

I. <u>Plaintiff's Motion for Summary Judgment [ECF No. 134]</u>

   a. Breach of Maritime Contract (Count I)

"To prevail on a breach of contract claim, a plaintiff must establish the existence of the following elements: '(1) a valid contract; (2) a material breach; and (3) damages.'" *Underwriters At Lloyds Subscribing to Cover Note MC-1151 v. Fedex Truckload Brokerage, Inc.*, No. 09-21892-CIV, 2010 WL 2681224, at *6 (S.D. Fla. July 7, 2010) (citing *Friedman v. New York Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. Dist. Ct. App. 2008)); *see Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1249 (11th Cir. 2005).[2] Based on the uncontroverted facts, this Court finds that Plaintiff has proved their breach of contract claim and will analyze each of the elements in turn.

"[A] contract is formed from offer, acceptance and consideration." *Greenberg v. Drs.*

---

[2] Because the test for breach of contract is substantially the same under both federal maritime law and Florida law (and would lead to the same result here), this Court need not "conduct any choice-of-law analysis" even though it is unclear whether federal maritime law or Florida law should apply. *Kol B'Seder, Inc. v. Certain Underwriters at Lloyd's of London Subscribing to Certificate No. 154766 Under Cont. No. B0621MASRSWV15BND*, 766 F. App'x 795, 801 n.4 (11th Cir. 2019).

*Assocs., Inc.*, 338 F. Supp. 3d 1280, 1281 (S.D. Fla. 2018) (citing *Med-Star Cent., Inc. v. Psychiatric Hosps. of Hernando Cty., Inc.*, 639 So.2d 636, 637 (Fla. Dist. Ct. App. 1994)). The Shipyard Agreement here undoubtedly constitutes a contract, as it evidences (1) an offer via its terms describing MPM's duties to the Petrus after the Second Sinking, (2) an acceptance of the agreement by both Pack and MPM via their signatures, and (3) consideration via Pack's agreement to pay all invoiced fees. [*See* ECF No. 1-3].

To constitute a material breach, a party's "nonperformance of a contract must be such as to go to the essence of the contract; it must be the type of breach that would discharge the injured party from further contractual duty on his part but a party's failure to perform some minor part of his contractual duty cannot be classified as a material or vital breach." *MDS (Canada), Inc. v. Rad Source Techs., Inc.*, 822 F. Supp. 2d 1263, 1298 (S.D. Fla. 2011), *aff'd in part, question certified*, 720 F.3d 833 (11th Cir. 2013), *certified question answered*, 143 So. 3d 881 (Fla. 2014), and *aff'd*, 579 F. App'x 700 (11th Cir. 2014). Without question, Pack's failure to pay Defendant tens of thousands of dollars that he agreed to pay for the salvage of his sunk boat is a material breach of the Shipyard Agreement—as payment for services provided is the quintessential purpose of a contract. *See Star2Star Commc'ns, LLC v. AMG Grp. of Brunswick, LLC*, No. 8:20-CV-2078-TPB-JSS, 2021 WL 4442668, at *3 (M.D. Fla. Sept. 28, 2021), *aff'd*, No. 21-13698, 2022 WL 1157776 (11th Cir. Apr. 19, 2022) (finding a failure to pay money owed under a contract was a material breach).

MPM's submitted evidence on this summary judgment record clearly establishes damages, as it only received a payment of $10,075.55 of the contractually agreed upon price of $91,529.30 for the services it provided to the Petrus to which Pack agreed, leaving a debt of $81,453.75 which Pack owed MPM. Pack also did not pay MPM for the agreed upon storage rate of $3,500.00 from

December 22, 2020, to January 22, 2020, nor the $220-per-day for MPM storing the Petrus from January 22, 2021, to February 17, 2021. Clearly, MPM's evidence shows that it suffered easily calculable damages stemming from Pack's material breach of the Shipyard Agreement.

Having established that there was a valid contract (the Shipyard Agreement), a material breach (Pack's failure to pay for MPM's services to which he agreed), and damages (the amount Pack failed to pay to MPM), the evidence clearly shows that MPM is entitled to Summary Judgment on Count I.

  b. Foreclosure of Maritime Lien For Necessaries (Count II)

The Federal Maritime Lien Act states that "any person who provides necessaries to a vessel on the order of the owner or a person authorized by the owner has a maritime lien and may bring a civil suit *in rem* to enforce it." *Moore v. M/V Sunny USA*, 847 F. App'x 603, 607 (11th Cir. 2021) (citing 46 U.S.C. § 31342) (quotation marks omitted). "A maritime action *in rem* for salvage, including contract salvage, is also a suit to enforce a lien." *Offshore Marine Towing, Inc. v. MR23*, 412 F.3d 1254, 1257 (11th Cir. 2005). However, attorneys' fees are not recoverable in an action *in rem*. *Id.* "A maritime lien is a special property right in a ship given to a creditor by law as security for a debt or claim subsisting from the moment the debt arises." *Galehead, Inc. v. M/V Anglia*, 183 F.3d 1242, 1247 (11th Cir. 1999) (quotation marks omitted).

"For a party to establish a maritime lien in a vessel: (1) the good or service must qualify as a 'necessary'; (2) the good or service must have been provided to the vessel; (3) on the order of the owner or agent; and (4) the necessaries must be supplied at a reasonable price." *Robbie's of Key W. v. M/V Komedy III*, 470 F. Supp. 3d 1264, 1268 (S.D. Fla. 2020) (citing *Barcliff, LLC v. M/V Deep Blue, IMO No. 9215359*, 876 F.3d 1063, 1068 n.5 (11th Cir. 2017)).

MPM has successfully shown that the services it provided to the Petrus were "necessaries,"

establishing the first and second elements. "Necessaries" include "repairs, supplies, towage, and [] use of a dry dock or marine railway[,]" docking and storage. *Rickenbacker Marina, Inc. v. M/Y SANCOCHO*, No. 1:22-CV-20788-JEM, 2023 WL 6279058, at *4 (S.D. Fla. July 17, 2023), *report and recommendation adopted*, 2023 WL 6255011 (S.D. Fla. Sept. 26, 2023) (citing 46 U.S.C. § 31301(4)); *Robbie's of Key W.*, 470 F. Supp. 3d at 1268. Here, after the Second Sinking, MPM salvaged the Petrus, dewatered it, lifted it, hauled it out of the water, and stored it at a dry dock. These services are clearly "necessaries."

Next, MPM has also established the third element as Pack, the owner of the Petrus, directed MPM to pick up, tow, and deliver the Petrus from RMK Merrill Stevens to Middle Point Marina, creating a duty for MPM to handle the Petrus with care. Pack also signed the Shipyard Agreement, thereby agreeing to pay for all service invoices MPM provided to the Petrus to secure it after the Second Sinking. Pack also acknowledged, and did not object to, the salvage of the Petrus after being notified by MPM of the Second Sinking.

Finally, on this record this Court finds that the services were performed at reasonable prices, largely because Pack "as the representative of the [Petrus] agreed to the storage [and other] price[s] in the [Shipyard Agreement]." *Robbie's of Key W.*, 470 F. Supp. 3d at 1268–69. Pack additionally made a partial payment of $10,075.55 to MPM for all the services provided to the Petrus, which supports a finding that the prices MPM was charging were reasonable. *See Am. Marine Tech., Inc. v. M/Y Alchemist*, 526 F. Supp. 3d 1236, 1247 (S.D. Fla. 2021), *aff'd sub nom. Am. Marine Tech, Inc. v. World Grp. Yachting, Inc.*, No. 21-11336, 2021 WL 4785888 (11th Cir. Oct. 14, 2021) ("With regard to the final element—that of a reasonable price—Defendant did not hire Plaintiff for a limited purpose; Defendant accepted the Vessel, and Defendant issued partial payment.").

Having found that MPM established all four required elements to prove that it had a maritime lien in the Petrus, this Court grants Summary Judgment in Plaintiff's favor as to Count II. However, this Court also notes that because Counts I and II overlap in their requested relief, MPM is not entitled to double damages even though Pack's actions constitute two grounds of recovery.

II.     Plaintiff's Motion for Default [ECF No. 135]

MPM also moves for entry of default against Defendant Chartered Yachts, claiming that "a court may enter default against a party who has failed to defend itself in an action." [Mot. for Default, ECF No. 135 at 3]. MPM argues that, because Chartered Yachts is an entity impermissibly without counsel in federal court despite this Court's Order to find new counsel by July 25, 2024 [ECF No. 124], this Court should enter a default against Chartered Yachts.

As a business entity is unable to represent itself without counsel in federal court, its failure to obtain counsel is a sufficient basis for a plaintiff to move for default. *See Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385 (11th Cir. 1985) (explaining that artificial entities cannot appear *pro se*); *Textron Fin. Corp. v. RV Having Fun Yet, Inc.*, No. 3:09–cv–2–J–34TEM, 2010 WL 1038503, at *5 (M.D. Fla. Mar. 19, 2010) ("The failure of an artificial entity to obtain counsel, in violation of a court order or rule to do so, has repeatedly been held to support default judgment, even absent violations of other rules or orders."). This Court ordered Chartered Yachts to obtain new counsel no later than July 25, 2024 [ECF No. 124]; yet, to date, it has not obtained new counsel. Even though Chartered Yachts previously appeared in this case and answered the Complaint [*see* ECF Nos. 33, 58], its failure to comply with the Court Order to obtain new counsel is sufficient reason to grant a default. *See Mayorga v. Stamp Concrete & Pavers, Inc.*, No. 13-81274-CIV, 2015 WL 1345364, at *2 (S.D. Fla. Mar. 23, 2015) (collecting cases).

Accordingly, Plaintiff's Motion for Default is GRANTED against Defendant Chartered Yachts Miami LLC. MPM may file a motion for default judgment, which the Court will consider according to law.

## CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion for Summary Judgment [**ECF No. 134**] is **GRANTED**. Summary Judgment is granted in favor of MPM and against M/V Petrus, *in rem*, and Greg Pack, *in personam*, on Counts I and II.

2. Plaintiff's Motion for Default against Defendant Chartered Yachts Miami LLC [**ECF No. 135**] is **GRANTED**. The **Clerk of Court** is directed to enter default against Defendant Chartered Yachts Miami LLC.

3. Plaintiff may file a Motion for Default Judgment against Defendant Chartered Yachts Miami.

4. This matter is **REFERRED** to United States Magistrate Judge Lauren Fleischer Louis for a Report and Recommendation on Plaintiff's damages and entry of final judgment. Plaintiff shall submit a proposed final judgment **no later than October 25, 2024**.

**DONE AND ORDERED** in the Southern District of Florida on October 11, 2024.



DAVID S. LEIBOWITZ
UNITED STATES DISTRICT JUDGE

cc: counsel of record